IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA CARGO, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. 11 C 2517 |
| | ) | |
| OFFICER LARRY DOTSON, | ) | |
| ET AL. | ) | |
| | ) | Judge Joan H. Lefkow |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

DEFENDANTS' MOTION
<u>FOR JUDGMENT AS A MATTER OF LAW</u>

Defendants respectfully submit the following motion pursuant to Rule 50 for judgment as a matter of law. As set forth more fully below and as will be presented orally during argument on this motion, as to each claim plaintiff has both failed to adduce sufficient evidence to be allowed to proceed further with the claim and the Officers in any event are entitled to the protection of qualified immunity with respect to the claim. Moreover, under any set of circumstances, plaintiff has not adduced sufficient evidence to be allowed to seek punitive damages.[1]

---

[1] Defendants respectfully submit that plaintiff has failed to adduce sufficient evidence to support any of her claims and that those claims are barred in any event by qualified immunity. Defendants discuss more specifically in the body of this motion only some of the reasons why this is so and do not waive other reasons or arguments why plaintiff's claims fail.

## *Plaintiff's Excessive Force Claims*

1.  There has been no evidence whatsoever presented that either Officer Dotson or Officer Parker ever seized or intended to seize plaintiff. Under such circumstances, as this Court recognized in its pretrial rulings, "the more stringent Fourteenth Amendment substantive due process standard will apply." Rulings on Motions *in Limine*, R. 123, p. 6.

2.  The elements of an excessive force claim under the due process clause of the Fourteenth Amendment are (1) the defendant must have intentionally used force against plaintiff; (2) the defendant must have intended to harm plaintiff by using force; (3) the defendant must have had no purpose other than to harm plaintiff by using force; (4) the use of force by the defendant must shock the conscience; and (5) plaintiff must have been harmed because of the defendant's intentional use of force against plaintiff *See, e.g., Warfield v. City of Chicago Et Al.,* 565 F.Supp.2d 948, 964 (N.D. Ill. 2008)("The guarantee of due process [in the Fourteenth Amendment] serves to protect the individual against the arbitrary action of government… Only the most egregious official conduct can be said to be arbitrary in the constitutional sense…. When officers are faced with a dangerous, fluid situation in which they were forced to make decisions in haste, under pressure, their conduct does not violate the Fourteenth Amendment unless it shocks the conscience…. In these cases, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the concerns of substantive due process. The *sine qua non* of liability in these cases is a purpose to cause

harm.") (citations, internal quotations and brackets omitted); *see also Schaefer v. Goch*, 153 F3d 793, 797 (7th Cir. 1998); *Bublitz v. Cottey,* 327 F.3d 485, 488, 491 (7th Cir. 2003) ("It is generally only deliberate action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.") (brackets, internal quotations and citations omitted).

3. Here, assuming *arguendo* plaintiff's version of events, plaintiff has adduced no evidence sufficient to present a jury issue with respect to the first four elements. There is no evidence, even viewing the evidence in the light most favorable to plaintiff that in pushing on the door the Officers (1) intentionally used force against plaintiff; (2) intended to harm plaintiff by using force; (3) had no purpose other than to harm plaintiff by using force; or (4) that such use of force is sufficient to shock the conscience. Plaintiff asserted that the door was pushed open after one Officer said "f--- that s---, go in there and get his a---" and denied that the Officers said anything that indicated that they wanted to harm her. By plaintiff's own admission, the Officers pushed on the door to get at her son and with no thought of injuring her.

4. Nor does it suffice to argue that, regardless of what was said, the Officers must have intended to hurt plaintiff because they pushed on the door knowing that she was in front of it or that a jury could so infer. This argument is foreclosed, correctly, by *Jordan v. City of Indianapolis*, 2002 WL 32067277 at *7 -

3

*10 (S.D. Ind. December 19, 2002), in which the Court rejected a wife's excessive force claim under the Fourteenth Amendment for a back injury suffered when Officers allegedly pushed her out of the way as they rushed up stairs to restrain husband. If an Officer's pushing someone aside to get at another person does not rise to the level of a violation of the Fourteenth Amendment, then it is necessarily also true that pushing on a door rather than a person – even a door with someone behind it – does not rise to the level of a violation of the Fourteenth Amendment violation.

    5.    The Officers also are entitled to the protection of qualified immunity. "To determine whether … [law enforcement officers] … are entitled to qualified immunity, … [courts] … ask (1) whether [plaintiff's] allegations make out a deprivation of a constitutional right and (2) whether the right was clearly established at the time of [the defendants'] alleged misconduct. [Courts] may address the prongs in whichever order … [is] … best suited to the circumstances of the particular case at hand." *Brooks v. City of Aurora Et Al.*, 653 F.3d 478, 483 (7th Cir. 2011)(citations and quotations omitted). As explained above, the evidence, even viewed in the light most favorable to plaintiff, does not make out a violation of the Fourteenth Amendment. Moreover, in light of the holding of *Jordan v. City of Indianapolis*, 2002 WL 32067277 at *7 - *10 (S.D. Ind. December 19, 2002) that shoving someone out of the way to get at a third party does not violate the Fourteenth Amendment, there was at the time of the events at issue no clearly

established right – under the Fourteenth Amendment – to be free from an Officer pushing on a door a person is behind to get at someone else.

6. Finally, with respect to plaintiff's failure to intervene and conspiracy claims, to the extent that these derivative claims are premised on plaintiff's excessive force claim, these claims fail because, for the reasons set forth above, plaintiff's underlying excessive force claim fails. *See, e.g., Brunson v. City of Chicago Et Al.*, 11 C 2011, R. 88, p. 10 n. 6 ("If there is no application [of] excessive force, then by definition, there is no unconstitutional failure to intervene.")(*citing Abdullahi v. City of Madison*, 423 F.3f 763, 767-68 (2005)).

## *Plaintiff's Unlawful Entry Claims*

7. First, a person who stands in the open doorway of a home is outside rather than inside the home. *United States v. Santana*, 427 U.S. 38, 42 (1976) (person standing in an open doorway is "not in an area where she ha[s] any expectation of privacy …. She was not merely visible to the public but was exposed to public view, speech, hearing and touch as if she had been standing completely outside her house."); *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 689 (7th Cir. 2001)(In [*United States v.*] *Santana*, [427 U.S. 38 (1967)], "the Court held that an individual voluntarily standing in the threshold of her home (i.e., in the middle of an open doorway) is outside rather than inside the home for purposes of the Fourth Amendment.").

8. Second, if a person inside a home crosses the threshold of the door of the home in any way, even just by placing part of his body over the threshold, that

5

person is outside the home. Defendants respectfully submit that this must be the law given that standing in an open doorway constitutes standing outside a home. *United States v. Santana*, 427 U.S. 38, 42 (1976). Thus, crossing the threshold of the doorway only in part, such as by sticking one's head or a limb over the threshold, must necessarily place one outside the home as well. Put differently, there can be no expectation that one is still within the privacy of the home when one sticks his head or a limb over the threshold of the door. *Katz* 389 U.S. at 351. And to put it differently yet again, it would be anomalous indeed, and make little sense, for the law to hold on the one hand that standing in an open doorway places one outside the home but that actually crossing the threshold with part of one's body does not place one outside the home. *See also, Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) ("But we need not pull out our rulers and begin to measure. Under the Fourth Amendment, the point must be identified by inquiry into reasonable expectations of privacy. … The Supreme Court has already considered the question of dividing outside from inside when the home is involved, although not completely resolving the question, in *United States v. Santana, supra*. In *Santana*, the Court held that an individual voluntarily standing in the threshold of her home (*i.e.*, in the middle of an open doorway) is outside rather than inside the home for purposes of the Fourth Amendment. …. The Court reasoned that an individual voluntarily standing in an open doorway has knowingly exposed herself to "public view, speech, hearing, and touch" just as if she were standing outside, in a public place. *Id.* In those places, and thus in an open doorway, under those

6

circumstances, the *Watson* rule, rather than the *Payton* rule, applies. *Id.*; *see also Katz*, 389 U.S. at 351, 88 S.Ct. 507 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").")(citations except to *Katz* omitted)

9. Third, a person who brings an occupant of the person's home to an open doorway of the home with knowledge that Officers on the other side of the doorway intend to arrest the occupant if they identify the occupant as the perpetrator of a crime has consented to a slight entry by police into the home in order to make the arrest. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) ("[W]e held [in *Berkowitz*] that an individual retains the right to be free from physical intrusion into the home by police officers without a warrant seeking to effectuate an arrest, but the right could be waived in that circumstance by acquiescence (rather than consent) to a slight entry. We stated our holding as follows: "if the police go to an individual's home without a warrant, knock on the door, announce from outside the home that the individual is under the arrest when she opens the door to answer, and the individual acquiesces to a slight entry to complete the arrest the entry is consistent with the Fourth Amendment..."). *See Berkowitz*, 927 F.2d at 1387 ("When the police assert from outside the home their authority to arrest a person, they have not breached the person's privacy interest in the home. If the person recognizes and submits to that authority, the arrestee, in effect, has forfeited the privacy of his home to a certain extent. At that point it is not unreasonable for the police to enter the home to the extent necessary to

7

complete the arrest. A person who has submitted to the police's authority and stands waiting for the police to take him away can hardly complain when the police enter his home briefly to complete the arrest."); *cf. Santana*, 427 U.S. at 42, 96 S. Ct. 2406.

10. Even viewing the evidence in the light most favorable to plaintiff, each of the three foregoing rules applies here to absolve the Officers of plaintiff's unlawful entry claims. Plaintiff admitted to bringing her son to the door to face Officers who asked to see her son because they believed that he was involved in an "incident" and thus plaintiff knew, even under her version of events, that the Officers might arrest her son. Plaintiff admitted in her deposition that her son entirely to her left and in full view of the Officers and sufficiently close to the doorway that he could stick his head over the threshold. Plaintiff's son thus was standing in the doorway within the meaning of *Santana* and was, even under her own testimony, arrested outside the doorway. Finally, plaintiff stated in her deposition that Officer Dotson grabbed her son when he stuck his head "out the door" and that she could not remember whether Officer Dotson's hand crossed the threshold when he did this. As set forth above, a person who sticks his head "out the door" is outside the dwelling, and thus, again by plaintiff's own admission, Shakur Cargo was arrested outside the dwelling.

11. It is undisputed that Shakur Cargo resisted Officer Dotson's effort at arrest by pulling backward. If plaintiff has, under the law, given testimony effectively admitting that Shakur Cargo was outside the apartment when arrested,

8

as she did, *see supra*, then the arrest began outside the apartment and the hot pursuit exigency necessarily applies to justify entry. See Rulings on Motions *in Limine*, R. 123, p. 4.

12. In addition, under the circumstances admitted by plaintiff, where she brought her son to the door in response to statements by the Officers that her son skipped school and was involved in an incident, where her son was in full view of the Officers when he came to the door, where her son was sufficiently close to the threshold to stick his head over the threshold and where her son did in fact stick his head over the threshold and was grabbed at that point, the Officers are entitled to qualified immunity under plaintiff's version of the facts. They did not violate any right of plaintiff (*see supra*) and, in any event, if what the Officers did, under the facts as described by plaintiff, constituted a violation of the Fourth Amendment, such right was not clearly established as of the date of the events at issue. *See*, *Sparing v. Village of Olympia Fields*, 266 F.3d 684 (7th Cir. 2001)(granting qualified immunity in doorway arrest case where plaintiff stood behind screen and Officer entered because law was unclear at that point that such actions under the circumstances violated the Fourth Amendment).

13. Finally, with respect to plaintiff's failure to intervene and conspiracy claims, to the extent that these derivative claims are premised on plaintiff's unlawful entry claim, these claims fail because, for the reasons set forth above, plaintiff's underlying unlawful entry claim fails. *See, e.g., Brunson v. City of Chicago Et Al.*, 11 C 2011, R. 88, p. 10 n. 6 ("If there is no application [of] excessive

9

force, then by definition, there is no unconstitutional failure to intervene.")(citing *Abdullahi v. City of Madison*, 423 F.3f 763, 767-68 (2005)).

## *Punitive Damages*

14. The Seventh Circuit pattern jury instruction for punitive damages in civil rights actions states:

> Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendant. You may assess punitive damages only if you find that his conduct was malicious or in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights.

Seventh Circuit Pattern Instruction 7.24. Plaintiff has failed to adduce sufficient evidence for the jury to consider an award of punitive damages. Plaintiff admitted that the Officers were polite and also that they gave no indication that they intended to harm her. Also, as shown above, the Officer's actions do not violate the "shocks the conscience" standard, which supports a holding that punitive damages may not be sought.

    Respectfully submitted,

    OFFICER LARRY DOTSON,
    OFFICER JEAN PARKER

Date: January 29, 2014.    By: /s Timothy P. O'Connor
    Their Attorney

Timothy P. O'Connor
John A. Meyer
MEYER & O'CONNOR, LLC
Suite 3300
135 S. LaSalle Street
Chicago IL 60603/(312)-346-9000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby states that he caused a copy of the foregoing DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW to be served upon:

Jeffrey Brooks Granich
Katie Z. Ehrmin
Law Offices Of Jeffrey B. Granich
Suite 840
53 W. Jackson
Chicago IL 60661

by hand delivery and electronic service on this 29th day of January, 2014.

/s Timothy P. O'Connor